## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| MARK GRANDSTAFF, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>OCCIDENTAL PETROLEUM CORPORATION<br><br>    Defendant. | **Case No. 5:22-cv-01184**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COMPLAINT

### SUMMARY

1.     Mark Grandstaff (Grandstaff) brings this lawsuit to recover unpaid overtime wages and other damages from Occidental Petroleum Corporation (Occidental) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201.

2.     Grandstaff worked for Occidental as a Mechanical Inspector January 2020 to May 2020.

3.     Grandstaff and the other similarly situated inspectors who worked for Occidental in the last three years regularly worked more than 40 hours a week.

4.     While working for Occidental these inspectors did not receive overtime for the hours they worked in excess of 40 hours in a single workweek.

5.     Instead of receiving overtime as required by the FLSA while working for Occidental, Grandstaff and other similarly situated Inspectors were paid a flat amount for each day worked (a day-rate) without overtime compensation.

6.     Neither Grandstaff, nor any other similarly situated Inspector who worked for Occidental and received a day-rate, received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these inspectors.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     Occidental conducts substantial business operations in this District and Division.

11.     Grandstaff performed work for Occidental in this District and Division.

## PARTIES

12.     Grandstaff worked as a Mechanical Inspector from approximately January 2020 until May 2020.

13.     While working for Occidental, Grandstaff and the other Inspectors received a day-rate with no overtime compensation.

14.     While Grandstaff was staffed to Occidental by the Bergalia Companies, his relationship with Occidental was an employer/employee relationship.

15.     Grandstaff's written consent is attached as Exhibit A.

16.     Grandstaff brings this action on behalf of himself and all other similarly situated Inspectors who were paid by Occidental's day-rate system.

17.     Although these Inspectors regularly worked more than 40 hours each week for Occidental, they were paid a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Inspectors employed by, or working on behalf of, Occidental Petroleum Corporation who were paid a day-rate with no overtime at**

**any time during the past three (3) years** (the Putative Class Members).

19.     The Putative Class Members are easily ascertainable from Occidental's business and personnel records.

20.     Occidental is a Delaware corporation and may be served by serving its registered agent for service of process, **C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201**, or wherever it may be found.

## COVERAGE UNDER THE FLSA

21.     At all relevant times, Occidental has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Occidental has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Occidental has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Occidental has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, Occidental has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Grandstaff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     Occidental treated Grandstaff and the Putative Class Members as employees and uniformly dictated the pay practices applied to Grandstaff and the Putative Class Members.

27.     Occidental's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these inspectors work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

28.     Occidental is one of the largest independent oil and natural gas exploration and production companies in the world, operating throughout the United States, including in Texas.

29.     To provide these services, Occidental hired Inspectors (like Grandstaff) to work on its behalf.

30.     Occidental did not hire these Inspectors on a project-by-project basis.

31.     Rather, Occidental hired and treated these workers just like regular, even if sometimes short-term, employees.

32.     During the relevant period, Grandstaff and the Putative Class Members regularly worked for Occidental in excess of 40 hours a week for weeks at a time.

33.     During the relevant period, Grandstaff and the Putative Class Members worked for Occidental on a day-rate basis.

34.     During the relevant period, Grandstaff and the Putative Class Members were not paid overtime for the hours they worked for Occidental in excess of 40 hours each week.

35.     These workers make up the proposed Putative Class.

36.     Occidental subjected these workers to the same or similar illegal pay practices for similar inspection work.

37.     Grandstaff reported directly to Occidental management-level employees.

38.     Occidental required Grandstaff to utilize a third-party staffing company as a payroll conduit for his work with Occidental.

39.     Grandstaff regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Grandstaff was paid a day-rate for each day worked, regardless of how many hours he worked in a day or week.

40.     As an Inspector, Grandstaff regularly worked more than 12 hours each day, often for weeks at a time.

41.     Grandstaff did not hire or fire employees.

42.     Grandstaff did not exercise discretion and judgment as to matters of significance.

43.     To the contrary, Grandstaff's work was governed entirely by Occidental.

44.     As an Inspector, Grandstaff would assist Occidental inspecting parts, coating, assembling parts, welding inspection, data book inspections, and assist in installations onsite.

45.     The Putative Class Members performed the same general job duties performed by Grandstaff.

46.     The Putative Class Members worked the same or similar schedule worked by Grandstaff, regularly working more than 40 hours each week. Grandstaff's work schedule is typical of the Putative Class Members.

47.     During the relevant period, Grandstaff and the Putative Class Members were paid a day-rate basis with no overtime compensation.

48.     Grandstaff and the Putative Class Members never received a salary.

49.     If Grandstaff and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455 or $684 after 2020.

50.     Grandstaff and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

51.     Without the job performed by Grandstaff and the Putative Class Members, Occidental would not have been able to complete its business objectives.

52.     Grandstaff and the Putative Class Members were economically dependent on Occidental and relied on Occidental for work and compensation.

53.     Occidental determined the amount and type of compensation paid to Grandstaff and the Putative Class Members.

54.     Occidental set Grandstaff's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Occidental.

55.     Grandstaff and the Putative Class Members worked in accordance with the schedule set by Occidental.

56.     Occidental prohibited Grandstaff and the Putative Class Members from subcontracting out the work they are assigned by Occidental.

57.     Grandstaff and the Putative Class Members had to follow Occidental's policies and procedures.

58.     Grandstaff and the Putative Class Members had to adhere to the quality standards put in place by Occidental.

59.     Grandstaff and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Occidental provided Grandstaff and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

60.     Grandstaff and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

61.     Occidental made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Grandstaff and the Putative Class Members work.

62.     Grandstaff and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

63.     Grandstaff and the Putative Class Members did not market their services while employed by Occidental.

64.     While employed by Occidental, Grandstaff and the Putative Class Members worked exclusively for Occidental.

65.     Occidental set Grandstaff's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Occidental.

66.     At all relevant times, Occidental maintained control, oversight, and direction of Grandstaff and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

67.     Occidental controlled Grandstaff's and the Putative Class Members' pay.

68.     Likewise, Occidental controlled Grandstaff's and the Putative Class Members' work.

69.     Grandstaff's and the Putative Class Members' work had to adhere to the quality standards put in place by Occidental.

70.     Grandstaff and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

71.     Occidental knew Grandstaff and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

72.     Occidental's records reflect the fact that Grandstaff and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

73.     Grandstaff and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Grandstaff and the Putative Class Members were paid on a day-rate basis.

74.     Occidental set these Inspector's schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Occidental's policies and procedures.

75.     The work Grandstaff and the Putative Class Members performed was an essential part of Occidental's core businesses.

76.     Occidental controlled Grandstaff's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

77.     Occidental exercised control over the hours and locations Grandstaff and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

78.     Even though Grandstaff and the Putative Class Members may have worked away from Occidental's offices without the constant presence of Occidental supervisors, Occidental still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

79.     Very little skill, training, or initiative was required of Grandstaff and the Putative Class Members to perform their job duties.

80.     Indeed, the daily and weekly activities of Grandstaff and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Occidental.

81.     Virtually every job function was predetermined by Occidental, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

82.     Occidental prohibited Grandstaff and the Putative Class Members from varying their job duties outside of predetermined parameters and required Grandstaff and the Putative Class Members to follow Occidental's policies, procedures, and directives.

83.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

84.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

85.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 50 hours in a workweek.

86.     Occidental uniformly denied Grandstaff and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

87.     Grandstaff and the Putative Class Members were not employed on a salary basis.

88.     Grandstaff and the Putative Class Members did not, and never did, receive guaranteed weekly compensation irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

89.     Occidental's day-rate policy violated the FLSA because it deprived Grandstaff and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

90.     Occidental knew Grandstaff and the Putative Class Members worked more than 40 hours in a week.

91.     Occidental knew, or showed reckless disregard for whether, Grandstaff and the Putative Class Members were its employees.

92.     Occidental knew, or showed reckless disregard for whether, Grandstaff and the Putative Class Members were not exempt from the FLSA's overtime provisions.

93.     Occidental has been sued for this day rate pay practice in the past.

94.     Occidental did not conduct any audits or investigations as to whether these Inspectors were its employees.

95.     Occidental did not conduct any audits or investigations as to whether its day rate pay practice constitutes a guaranteed salary.

96.     Nonetheless, Grandstaff and the Putative Class Members were not paid overtime.

97.     Occidental knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

98.     Grandstaff incorporates the preceding paragraphs.

99.     Grandstaff brings this claim as a collective action under the FLSA.

100.    The Putative Class Members were victimized by Occidental's pattern, practice, and/or policy which was in willful violation of the FLSA.

101.    Other Putative Class Members worked with Grandstaff and indicated they were paid in the same manner and performed similar work.

102.    Based on his experiences with Occidental, Grandstaff is aware that Occidental's illegal practices were imposed on the Putative Class Members.

103.    The Putative Class Members are similarly situated in all relevant respects.

104.    The Putative Class Members are blue-collar workers.

105.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

106.    The illegal day-rate policy that Occidental imposed on Grandstaff was likewise imposed on all Putative Class Members.

107.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

108.     The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

109.     The overtime owed to Grandstaff and the Putative Class Members will be calculated using the same records and using the same formula.

110.     Grandstaff's experiences are therefore typical of the experiences of the Putative Class Members.

111.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

112.     Grandstaff has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

113.     Like each Putative Class Member, Grandstaff has an interest in obtaining the unpaid overtime wages owed under federal law.

114.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

115.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Occidental will reap the unjust benefits of violating the FLSA.

116.     Further, even if some of the Putative Class Members could afford individual litigation against Occidental, it would be unduly burdensome to the judicial system.

117.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

118.     The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

119.     Among the common questions of law and fact are:

      a.   Whether Occidental employed the Putative Class Members within the meaning of the FLSA;

      b.   Whether Occidental's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

      c.   Whether Occidental's violation of the FLSA was willful; and

      d.   Whether Occidental's illegal pay practice applied to the Putative Class Members.

120.    Grandstaff and the Putative Class Members sustained damages arising out of Occidental's illegal and uniform employment policy.

121.    Grandstaff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

122.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Occidental's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

123.    Occidental is liable under the FLSA for failing to pay overtime to Grandstaff and the Putative Class Members.

124.    Consistent with Occidental's illegal day-rate policy, Grandstaff and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

125.    As part of its regular business practices, Occidental intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Grandstaff and the Putative Class Members.

126.    Occidental's illegal day-rate policy deprived Grandstaff and the Putative Class Members of the premium overtime wages they were owed under federal law.

127.    Occidental was aware, or should have been aware, that the FLSA required it to pay Grandstaff and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

128.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

129.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

130.    Those similarly situated employees are known to Occidental, are readily identifiable, and can be located through Occidental's records.

**CAUSE OF ACTION**
**VIOLATION OF THE FLSA**

131.    Grandstaff realleges and incorporates by reference all allegations in preceding paragraphs.

132.    Grandstaff brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

133.    Grandstaff violated, and is violating, the FLSA by failing to pay Grandstaff and the Putative Class Members overtime.

134.    Occidental misclassified Grandstaff and Putative Class Members for purposes of the FLSA overtime requirements.

135.    Grandstaff and the Putative Class Members were Occidental's employees for purposes of the FLSA overtime requirements.

136.    Occidental was Grandstaff's and the Putative Class Members' employer under the FLSA. Occidental suffered or permitted Grandstaff and the Putative Class Members to work for or on its behalf during the relevant period.

137.    Occidental cannot meet its burden to demonstrate Grandstaff and Putative Class Members are exempt from overtime under the administrative exemption.

138.     Occidental cannot meet its burden to demonstrate the Grandstaff and Putative Class Members are exempt from overtime under the executive exemption.

139.     Occidental cannot meet its burden to demonstrate Grandstaff and Putative Class Members are exempt from overtime under the professional exemption.

140.     Occidental cannot meet its burden to demonstrate Grandstaff and Putative Class Members are exempt from overtime under the highly compensated exemption.

141.     Occidental failed to guarantee Grandstaff and the Putative Class Members a salary.

142.     Occidental failed to pay Grandstaff and the Putative Class Members overtime.

143.     Grandstaff and the Putative Class Members were paid a day-rate while working for Occidental.

144.     Occidental knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Grandstaff and the Putative Class Members overtime compensation.

145.     Occidental's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

146.     Accordingly, Grandstaff and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

147.     Grandstaff demands a trial by jury.

## PRAYER

WHEREFORE, Grandstaff, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.  An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.  A judgment against Occidental awarding Grandstaff and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.  An order awarding attorneys' fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Federal ID No. 27157
Andrew W. Dunlap
Texas Bar No. 24078444
Federal ID No. 1093163
Richard M. Schreiber
Texas Bar No. 24056278
Federal ID No. 705430
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys in Charge for Plaintiff**